CHRISTOPHER JACKMAN *ET AL.*, PLAINTIFFS - APPEL-
LANTS, v. JOHN M. BODINE *ET AL.*, DEFENDANTS-
RESPONDENTS.

THE ELIZABETH DAILY JOURNAL *ET AL.*, PLAINTIFFS-
APPELLANTS, v. ROBERT J. BURKHARDT *ET AL.*, DE-
FENDANTS-RESPONDENTS.

Argued June 27, 1967—Decided July 3, 1967.

*Mr. John M. Boyle* argued the cause for appellants The Elizabeth Daily Journal *et al.* (*Messrs. Sauer & Boyle,* attorneys).

*Mr. Hugo M. Pfaltz, Jr.*, argued the cause for appellants Anthony Scala and Frank X. McDermott (*Messrs. Bourne, Schmid, Burke & Noll*, attorneys).

*Mr. Alan B. Handler*, First Assistant Attorney General, argued the cause for respondents (*Mr. Stephen G. Weiss*, Deputy Attorney General, on the brief; *Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney).

The opinion of the court was delivered

PER CURIAM. After our decision in *Jackman v. Bodine*, 43 *N. J.* 453 (1964), in which we found the legislative article of the *Constitution of* 1947 did not comply with the requirements of one man-one vote as delineated by the United States Supreme Court, the people of the State adopted an amendment to the Constitution, which amendment as well as the first work product under it is attacked in the proceedings now before us. These proceedings were consolidated by our order and assigned to the trial court for determination. The trial court rejected the attacks and the appeal from its judgment is now before us.

The constitutional amendments continue a bicameral legislature. *Article* IV, § II, ¶ 1 provides that the Senate shall consist of 40 members to be apportioned among Senate districts as nearly as may be according to the number of their inhabitants as reported in the last preceding decennial census of the United States and according to the method of equal proportions. Each Senate district shall be composed wherever practicable of one single county, and, if not so practicable, of two or more contiguous whole counties. Paragraph 2 provides that each Senator shall be elected by the voters of the Senate district, except that if the Senate district is composed of two or more counties and two Senators are apportioned to the district, one Senator shall be elected by the voters of each *Assembly* district.

Paragraph 3 provides for a General Assembly of 80 members. The basic theme is that there shall be two Assemblymen

for each Senator, and that the Assemblymen shall be elected from districts smaller than the Senate district except where only one Senator is apportioned to a Senate district, in which event the Senate district will also constitute the Assembly district. All other Senate districts shall be divided into Assembly districts equal in number to the number of Senators apportioned to the Senate district. Paragraph 3 continues:

"* * * The Assembly districts shall be composed of contiguous territory, as nearly compact and equal in the number of their inhabitants as possible, and in no event shall each such district contain less than eighty per cent nor more than one hundred twenty per cent of one-fortieth of the total number of inhabitants of the state as reported in the last preceding decennial census of the United States."

The cited paragraph further provides that unless necessary to meet the requirements set forth above, no county or municipality shall be divided among Assembly districts unless it shall contain more than one-fortieth of the total number of inhabitants of the State, and no county or municipality shall be divided among a number of Assembly districts larger than one plus the whole number obtained by dividing the number of inhabitants in the county or municipality by one-fortieth of the total number of inhabitants of the State. The terms of office of the members of the General Assembly are less than those of the Senators.

*Article* IV, § III deals with the machinery for the creation of districts and for apportionment. It provides for an Apportionment Commission of ten members, five to be appointed by the chairman of the state committee of each of the two political parties whose candidates for Governor receive the largest number of votes at the most recent gubernatorial election. If the Commission is unable to perform its assigned role, the Chief Justice of the Supreme Court shall appoint an eleventh member, and the Commission as thus constituted shall, by a majority vote of the whole number of its members, complete its assigned task within one month after appointment of the eleventh member.

The amendment to the Constitution, by way of a schedule annexed to it, *Article* XI, § V, ¶ 1, provides that for the purpose of electing Senators in 1967 and until the 1970 decennial census, the 40 Senators are allocated among 15 Senate districts, which are there specified. Paragraph 2 provides that until the mentioned census an Apportionment Commission appointed in the same manner as set forth above shall establish the Assembly districts. Paragraph 3 again provides for the appointment of an eleventh member by the Chief Justice if the original ten appointees shall fail to certify a work product by a specified date. In fact the Commission did so fail, and the Chief Justice did name an eleventh member, after which the Commission made a report signed by eight members.

As stated above, the schedule provides with respect to the election this year for 15 districts. Those districts and the number of Senators assigned to them are the following:

First District — the counties of Gloucester, Atlantic and Cape May, two Senators;

Second District—the counties of Salem and Cumberland, one Senator;

Third District—the county of Camden, three Senators;

Fourth District — the counties of Burlington and Ocean, two Senators;

Fifth District—the county of Monmouth, two Senators;

Sixth District—the county of Mercer, two Senators;

Seventh District—the county of Middlesex, three Senators;

Eighth District—the county of Somerset, one Senator;

Ninth District—the county of Union, three Senators;

Tenth District—the county of Morris, two Senators;

Eleventh District—the county of Essex, six Senators;

Twelfth District—the county of Hudson, four Senators;

Thirteenth District—the county of Bergen, five Senators;

Fourteenth District—the county of Passaic, three Senators; and

Fifteenth District — the counties of Sussex, Warren and Hunterdon, one Senator.

It will be noted that of the 21 counties in the State, 11 constitute separate Senate districts. Each such county has more than or closely approaches one-fortieth of the population (151,670) as determined by the 1960 census. Of the remaining ten counties that are associated with other counties in the formation of districts, two counties, Atlantic and Burlington, have more than one-fortieth of the population but they are joined with other counties in an effort to achieve the requirement of one man-one vote. In general terms it may be said that the heavy population in our State lives along an axis running from New York to Philadelphia with the result that the counties which individually have less than one-fortieth (151,670) of the State's population are located northwest and southeast of that line.

The following table sets forth the Senate districts, constituent Assembly districts, the population in each of those districts, the number of Senators, the percent of relative deviation in the Senate districts and Assembly districts, *i. e.*, the percentage by which the population per district deviates from the mean population per district:

| Sen. Dists. | Assem. Dists. | Coun-ties | 1960 Population by Sen. Dists. | 1960 Population by Assem. Dists. | No. of Sen. | Population Per Senator | % of Relative Deviation Sen. Dists. from State-wide Mean Average | % of Relative Deviation Assem. Dists. from State-wide Mean Average |
|---|---|---|---|---|---|---|---|---|
| I | | Glstr. | 134,840 | | | | | |
| | | Atl. | 160,880 | | | | | |
| | | Cape M | 48,555 | | | | | |
| | | | 344,275 | | 2 | 172,138 | + 13.5 | |
| | 1 A | | | 172,369 | | | | + 13.6 |
| | 1 B | | | 171,906 | | | | + 13.3 |
| II | 2 | Salem | 58,711 | | | | | |
| | | Cmbld. | 106,850 | | | | | |
| | | | 165,561 | 165,561 | 1 | 165,561 | + 9.2 | + 9.2 |
| III | | Camden | 392,035 | | 3 | 130,678 | - 13.8 | |
| | 3 A | | | 130,543 | | | | - 13.9 |
| | 3 B | | | 128,822 | | | | - 15.1 |
| | 3 C | | | 132,670 | | | | - 12.5 |

| IV | | Ocean | 108,241 | | | | | | | |
| | | Burlton | 224,499 | | | | | | | |
| | | | 332,740 | | 2 | 166,370 | + | 9.7 | | |
| | 4 A | | | 166,366 | | | | | + | 9.7 |
| | 4 B | | | 166,374 | | | | | + | 9.7 |
| V | | Monmth | 334,401 | | 2 | 167,201 | + | 10.2 | | |
| | 5 A | | | 167,673 | | | | | + | 10.6 |
| | 5 B | | | 166,728 | | | | | + | 9.9 |
| VI | | Mercer | 266,392 | | 2 | 133,196 | - | 12.2 | | |
| | 6 A | | | 125,597 | | | | | - | 17.2 |
| | 6 B | | | 140,795 | | | | | - | 7.2 |
| VII | | Mdlsex | 433,856 | | 3 | 144,619 | - | 4.6 | | |
| | 7 A | | | 140,508 | | | | | - | 7.4 |
| | 7 B | | | 147,571 | | | | | - | 2.7 |
| | 7 C | | | 145,777 | | | | | - | 3.9 |
| VIII | 8 | Somset | 143,913 | 143,913 | 1 | 143,913 | - | 5.1 | - | 5.1 |
| IX | | Union | 504,255 | | 3 | 168,085 | + | 10.8 | | |
| | 9 A | | | 168,661 | | | | | + | 11.2 |
| | 9 B | | | 168,930 | | | | | + | 11.4 |
| | 9 C | | | 166,664 | | | | | + | 9.9 |
| X | | Morris | 261,620 | | 2 | 130,810 | - | 13.8 | | |
| | 10 A | | | 131,629 | | | | | - | 13.2 |
| | 10 B | | | 129,991 | | | | | - | 14.3 |
| XI | | Essex | 923,545 | | 6 | 153,924 | + | 1.5 | | |
| | 11 A | | | 160,040 | | | | | + | 5.5 |
| | 11 B | | | 162,884 | | | | | + | 7.4 |
| | 11 C | | | 146,814 | | | | | - | 3.2 |
| | 11 D | | | 152,943 | | | | | + | 0.8 |
| | 11 E | | | 147,490 | | | | | - | 2.8 |
| | 11 F | | | 153,374 | | | | | + | 1.1 |
| XII | | Hudson | 610,734 | | 4 | 152,684 | + | 0.7 | | |
| | 12 A | | | 167,089 | | | | | + | 10.2 |
| | 12 B | | | 139,767 | | | | | - | 7.8 |
| | 12 C | | | 146,070 | | | | | - | 3.7 |
| | 12 D | | | 157,808 | | | | | + | 4.0 |
| XIII | | Bergen | 780,255 | | 5 | 156,051 | + | 2.9 | | |
| | 13 A | | | 156,943 | | | | | + | 3.5 |
| | 13 B | | | 155,139 | | | | | + | 2.3 |
| | 13 C | | | 156,734 | | | | | + | 3.3 |
| | 13 D | | | 155,001 | | | | | + | 2.2 |
| | 13 E | | | 156,438 | | | | | + | 3.1 |
| XIV | | Pasic | 406,618 | | 3 | 135,539 | - | 10.6 | | |
| | 14 A | | | 136,047 | | | | | - | 10.3 |
| | 14 B | | | 143,663 | | | | | - | 5.3 |
| | 14 C | | | 126,908 | | | | | - | 16.3 |
| XV | 15 | Sussex | 49,255 | | | | | | | |
| | | Warren | 63,220 | | | | | | | |
| | | Hundon | 54,107 | | | | | | | |
| | | | 166,582 | 166,582 | 1 | 166,582 | + | 9.8 | + | 9.8 |
| | | | 6,066,782 | 6,066,782 | 40 | 151,670 | +/- | 7.2 | +/- | 8.1 |

The population variance ratio between the average population of the most under-represented district and the most over-represented is with respect to the Senate 1.30 :1 and with respect to the Assembly 1.37 :1. The minimum fraction of the population necessary for control of the Senate is 49.1% and of the Assembly 47.3%.

There are only three issues which merit consideration.

First it is urged there should be a rearrangement of the first, second, and third senatorial districts set forth in the schedule of the Constitution, to the end that Atlantic County would constitute a separate district with one Senator; Cumberland and Cape May would constitute another district with one Senator; and the counties of Camden, Gloucester, and Salem would constitute still another district to which four Senators would be allocated.

Under the districting as set forth in the schedule of the Constitution for the election of Senators, the First District consisting of Atlantic, Gloucester, and Cape May shows a relative deviation from the statewide mean average of +13.5%; the Second District consisting of Salem and Cumberland counties shows a deviation of +9.2%; and the Third District consisting of Camden County to which three Senators are allocated shows a deviation of —13.8%. Under the proposed redistricting of the mentioned counties, the relative deviation from the statewide average would be +6.1% in the Atlantic County district; +2.5% in the Cumberland-Cape May district; and —3.5% in the Camden-Gloucester-Salem district to which four Senators would be allocated. With respect to the statewide scene, the proposed change would reduce the statewide deviation from ±7.2% to ±5.7%, and the percentage of population needed to elect a majority in the Senate will be raised from 49.1% to 50.2%. We note also that the proposed redistricting would result in an improvement of the apportionment of Assemblymen under the equal-proportions method, a matter to which we will refer later.

There are only two factors which can be suggested to support the Senate districts in question as against the proposed revision. One is that although under both the schedule plan and the proposed revision, there is one county having more than the statewide mean average (151,670), the allocation of counties in the constitutional schedule gives an independent district status to the larger of those two counties. Specifically, Atlantic County, if dealt with as a separate district

would have apportioned to it one Senator whereas Camden as a separate district would receive three Senators. The second factor is that the county of Gloucester, which contains less than one-fortieth of the total number of inhabitants of the State, would have to be divided among two Assembly districts, whereas the Constitution in its permanent provisions states that, unless necessary to meet other stated requirements, "no county or municipality shall be divided among Assembly districts unless it shall contain more than one-fortieth of the total number of inhabitants of the state."

We cannot see in either of these factors a justification for the substantial deviations in question when they can be reduced to the extent indicated by reshuffling of contiguous counties. See *Swann v. Adams*, 385 *U. S.* 440, 87 *S. Ct.* 569, 17 *L. Ed. 2d* 501 (1967), and *Jones v. Falcey*, 48 *N. J.* 25 (1966). As emphasized in both of the cases just cited, deviations from absolute equality may be tolerated to the end that existing political boundaries will be respected and gerrymandering thus discouraged, provided of course that the deviations be not unreasonable. But where, as here, that same objective can readily be achieved by another arrangement of the same contiguous counties, resulting in a substantially reduced deviation, that arrangement must be accepted. Our attention is not called to any other consideration that could conceivably support the discrepancies here involved. See *Jones v. Falcey, supra,* 48 *N. J.* 25. Our constitutional provision of course must give way to the requirements of the Federal Constitution as construed by the United States Supreme Court in *Reynolds v. Sims*, 377 *U. S.* 533, 84 *S. Ct.* 1362, 12 *L. Ed. 2d* 506 (1964), and the companion cases.

A judgment therefore must be entered providing for the creation of the three new districts as set forth above.

This raises the question as to how many Assembly districts must be created. The amendment in its permanent provisions, *Art.* IV, § II, ¶ 2, provides that "if the Senate district is composed of two or more counties and two Senators are ap-

portioned to the district, one Senator shall be elected by the legally qualified voters of each Assembly district." Since under the redistricting change the judgment will direct that four Senators are to be elected within the district consisting of Camden, Gloucester, and Salem counties, the question is whether those Senators shall be elected at large from that district or whether they shall be individually elected from four Assembly districts. We assume that the quoted constitutional provision was inserted in the hope that the smaller county in a combination might be able to have more meaningful representation in the Senate if the Assembly districts are used. It seems to us that, to adhere to that intent, Assembly districts should be used where more than two Senators are to be selected from a multi-county senatorial district.

The matter will accordingly be remanded to the 11-man Apportionment Commission to the end that they certify new Assembly districts for the Senate district comprising Camden, Gloucester, and Salem counties.

In the light of the timetable with respect to the election scheduled for this November, we cannot overlook the possibility that the Apportionment Commission may be unable to make a timely certification of such Assembly districts. In view of the mentioned time limitations, we see no course but to provide that, if the Apportionment Commission shall be unable to certify acceptable Assembly districts by July 20, the Senators and Assemblymen will have to run at large in the Camden-Gloucester-Salem district.

The second question relates to the apportionment of Assemblymen. The constitutional amendment proceeds on the thesis that after the senatorial districts are fixed and the Senators are apportioned to those districts according to the equal-proportions method, the Assemblymen shall thereupon be apportioned mechanically by allocating two Assemblymen for each Senator. Thus the equal-proportions method of allocation is not applied separately with respect to the 80 Assemblymen to be allocated. The obvious result is to accentuate any disparity which exists in the Senate and thereby to eliminate any hope

that a disparity in one house might be compensated by a countervailing disparity in the other.

We cannot conceive of any rational basis to support this artificial inequality in the General Assembly. We have no doubt that the federal constitutional requirement is offended by it, and hence, notwithstanding the provisions of our State Constitution, the 80 Assemblymen must be apportioned among the Senate districts according to the equal-proportions method and without reference to the apportionment of the Senators. Applying this view to the Senate districts as set forth in the schedule forming part of the recent amendment, there would have to be a change in the allocation of Assemblymen in four districts, two experiencing a reduction and two an increase of one each. As we noted earlier in discussing the first issue, one of the gains with respect to the direction for the formation of the new Senate districts is an improvement statewide with respect to the apportionment of Assemblymen. Instead of four districts being affected, only two will be, *i. e.,* the Assemblymen now allocated to the district consisting of Passaic County will be reduced from six to five, and those allocated to the district consisting of Union County will be increased from six to seven.

Since the constitutional plan contemplates that two Assemblymen will run in each district and the Apportionment Commission has dealt with the Passaic and Union districts on that basis, there arises the question as to what alteration, if any, must be made to meet the required change under which the Passaic and Union districts will elect an odd number of Assemblymen.

As to Union County where three such Assembly districts are in existence and seven are to be elected rather than six, it seems to us that the sensible solution would be to have the seventh Assemblyman run at large within the entire Senatorial district, and the judgment will so provide.

As to·Passaic County, two approaches appear to be feasible. It could be ordered that three run, one each, in the three Assembly districts certified by the Apportionment Com-

mission, and that the remaining two run at large in the senatorial district. Another approach would be to have two new Assembly districts created to the end that two Assemblymen may be elected in each, the fifth to be chosen at large. The latter course seems more consonant with the constitutional conception that Assemblymen will be running from Assembly districts in pairs rather than at large where the Senate district is larger than the Assembly district. Accordingly there will be remanded to the 11-man Apportionment Commission the task of preparing two new Assembly districts for Passaic County, with the fifth man running at large. Again by virtue of the time limitations already mentioned, the judgment will provide that if the new districts are not certified by July 20, the five Assemblymen allocated for the Passaic senatorial district will run at large in that district.

The remaining matter which warrants discussion deals with the population discrepancies among or between Assembly districts within the Senate district of which they are constituent parts. The thrust of the complaint is that in a number of instances the intra-senatorial district variations could be reduced by another configuration of counties, municipalities or wards (where the municipal lines were necessarily disregarded in forming Assembly districts).

The factual presentation is quite meager. The complaining parties suggest certain rearrangements, and the defendants respond that although the districts would come somewhat closer to the optimum population size, nonetheless the Apportionment Commission selected arrangements which are more "compact." In some situations it is suggested that other matters may have been in mind, such as so-called community interests, partisan history, and residence of incumbents. We have no doubt that the last mentioned considerations are wholly irrelevant to the subject and cannot support deviations of any kind. And we add that the constitutional provision concerning deviations between 80 and 120 per cent from the average, whatever may be its role as an outer limit, cannot itself authorize any deviation whatever. See *Jones v. Falcey, supra,* 48 *N. J.,* at *p.* 37.

The only subject which calls for comment is that of "compactness." Compactness usually appears in discussions of districting, and of course the constitutional amendments cited above refer to it. We incline to believe that the concept is substantially significant only when wholly new district lines are being created without reference to existing political subdivisions. Where the districts are being created on the basis of existing political subdivisions, it seems to us that compactness, although not irrelevant, becomes a much reduced factor. We do not think it possible to state the precise impact of compactness, but we believe it helpful for future guidance to suggest that population equality must be distinctly paramount. Compactness no doubt would be a material factor if the choice were between a configuration of existing political entities which would yield such bizarre designs as a "shoe lace" or "horse shoe." Absent such extremes, compactness may not be relied upon to justify an appreciable deviation.

The record being sparse, the question is whether we should remand the subject to the Apportionment Commission for reconsideration in the light of the foregoing views. Again, we are confronted with an imminent election, and since a reconsideration could entail the subject of Assembly districting throughout the State, we deem it unwise to direct that that task be undertaken and completed before the November 1967 election. In reaching this conclusion we have taken into account the fact that the deviations, although calling for explanation, are not so substantial as to warrant a delay. As has been noted so frequently in this area, it is imperative that government continue, and to that end deviations which might otherwise be fatal will be tolerated for the time being. See *Jones v. Falcey, supra,* 48 *N. J.,* at *pp.* 40–41. Hence for the purpose of the election this year we will accept the work of the Apportionment Commission in this respect. As to the Assembly election scheduled for the year 1969, ample time exists for a full exploration of the challenged deviations and the reasons therefor. To that end the 11-man Apportionment

Commission shall continue in office and make a seasonable recertification of Assembly districts for the 1969 election.

A judgment will be entered in this Court in accordance with this opinion, and the mandate will issue forthwith. No costs.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN — 7.

*Opposed* — None.