Leonard J. MAHONEY, Plaintiff,

v.

Robert D. BURKHARDT, Secretary of State, the General Assembly of the State of New Jersey, the Senate of the State of New Jersey, the Speaker of the General Assembly of the State of New Jersey, and the President of the Senate of the State of New Jersey, Defendants.

Civ. A. No. 1021-68.

United States District Court
D. New Jersey.

May 7, 1969.

John A. Yacovelle, Jr., Cherry Hill, N. J., for plaintiff.

Arthur J. Sills, Atty. Gen. of N. J., Trenton, N. J., for defendants.

## OPINION

Before McLAUGHLIN, Circuit Judge, and WORTENDYKE and WHIPPLE, District Judges.

GERALD McLAUGHLIN, Circuit Judge.

This is a suit to enjoin the June 3, 1969 primary election in New Jersey under the interim apportionment plan certified by the Supreme Court of New Jersey on April 22, 1969. Plaintiff seeks postponement of that election in order to permit the presentment of alternative interim apportionment plans for the conduct of the November general election. He alleges that the said apportionment violates the Fourteenth Amendment of the Constitution of the United States and asserts that "postponement of the primary elections will almost certainly provide New Jersey with a better apportionment scheme for the November, 1969 elections * * *".

The case is replete with procedural irregularities. For example, plaintiff filed and served upon defendant a "Notice of Motion for Summary Judgment, Or, In the Alternative, Interlocutory Injunctive Relief" on April 28, 1969 just three days before the return date before this Court on May 1, 1969. In the state of the proofs before us the summary judgment application is plainly frivolous. It will be denied. That brings us to the examination of plaintiff's injunction request which involves important constitutional issues.

Legislative apportionment in New Jersey has a long and difficult history. Knowledge of the state's patient, good faith efforts to obtain acceptable apportionment is vital to an understanding of the current situation. We note, at the outset, that its Supreme Court as early as 1964 (Jackman v. Bodine, 43 N.J. 453, 205 A.2d 713) and from then on has exercised constant supervision over the problem. Those continuing endeavors to formulate a constitutional apportionment in this complex transitional area of the law must not be ignored. Following the first Jackman decision temporary legislation was enacted to formulate an interim apportionment plan. See L. 1965, c. 19; N.J.S.A. 52:10B–1 et seq. In 1965 the New Jersey Supreme Court, retaining reapportionment jurisdiction under Jackman v. Bodine, found that legislative plan temporarily feasible and a subsequent challenge within the Jackman title was rejected. 44 N.J. 414, 209 A.2d 825. At p. 418, 209 A.2d at p. 827 the Court stated:

"In indicating in our second opinion in this cause that the General Assembly as now constituted could continue for temporary purposes, we had in mind that while the deviations might well be too great in a permanent plan, those deviations would be tolerable in a transitional one, (footnote omitted) if the total temporary plan were compatible with the objective of Reynolds v. Sims [377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506]."

Argument was scheduled on the question whether a permanent reapportionment plan could be devised only by a Constitutional Convention. Prior to hearing, legislation was passed providing such Constitutional Convention. That Convention, duly elected and convened, established a new apportionment plan for New Jersey. In November, 1966 the electorate approved the plan. Suit was brought in the state Supreme Court challenging this plan. See Elizabeth Daily Journal v. Burkhardt, 49 N.J. 406, 231 A.2d 193 (1967). In reviewing the plan the Court frankly stated at p. 415, 231 A.2d at p. 198:

"We cannot see in either of these factors a justification for the substantial deviations in question when they can be reduced to the extent indicated by reshuffling of contiguous counties."

In that opinion some Senate districts were invalidated and the 11-man Apportionment Commission (created by the Constitutional Convention to draw the Assembly Districts) was given the task of preparing new assembly districts in accordance with the Court's ruling.

While the Court was working its way through the Elizabeth Daily Journal suit, a complaint and order to show cause was filed in the Federal District Court, New Jersey District, Rabkin v. Burkhardt, Civil Action No. 758–67 (1967). That cause was heard and disposed of promptly. The order denying the injunction and dismissing the complaint stated:

"We are also, in the exercise of our discretion, entirely satisfied, even assuming our jurisdiction in this action, that we should abstain from acting therein during the orderly state process of working out the said reapportionment."

As a result of the holding in the Elizabeth Daily Journal litigation, the 11-man Apportionment Commission was to continue in office and "make a seasonable recertification of Assembly districts for the 1969 election". (Elizabeth Daily Journal, supra, 49 N.J. p. 420, 231 A.2d p. 201).

In March, 1969 the Apportionment Commission petitioned the New Jersey Supreme Court for instructions, apparently uncertain regarding the standards to apply in recertifying Assembly districts. That petition was dismissed but the Court conducted a hearing and directed the Commission to file its plan with the Court as well as the Secretary of State. The plan was filed April 7, 1969. On April 21, 1969 the Court heard argument from six objectors. The plaintiff herein did not choose to

object in the State Court proceeding although ample opportunity was offered. The opinion of the Court, filed April 22, 1969, in effect rejected the various objections. In upholding the Commission's plan the Court said:

"It is clear that the Commission abided faithfully by the computer output."

Meanwhile prior to the hearings on the objections to the 1969 apportionment plan, on April 9, 1969, the United States Supreme Court filed its opinions in Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519, April 7, 1969, and Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535, April 7, 1969. These, at the very least, rendered New Jersey's state election reapportionment views doubtful. The state Court facing their possible impact, the probable conflict of the New Jersey basic reapportionment plan with the State constitution and the imminency of the coming election, certified the plan for the 1969 elections, retained jurisdiction, and made a firm commitment to not only arrange for full argument in the Fall of 1969 but to settle New Jersey reapportionment "well in advance of the 1971 election."

In the light of what has been the expanding character of the governing constitutional principles the New Jersey Supreme Court has been and is acting properly and expeditiously to bring New Jersey reapportionment within the guidelines set by the United States Supreme Court. A vital element of that process is the continued normal functioning of the June primary and the November next election under the existing temporary apportionment. By the time the latter has come to pass the state Court will undoubtedly have resolved the entire New Jersey reapportionment operation. Should substantial doubt arise as to whether that Court has correctly followed Kirkpatrick and Wells, immediate appeal to the United States Supreme Court will be available, with prompt, permanent clarification by that Court if that be indicated. All that, the satisfactory, permanent end result of the New Jersey Supreme Court having worked out New Jersey's full and wholehearted compliance with the one man, one vote mandate of the Constitution of the United States.

In Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965) the Supreme Court vacated an order of a District Court which invalidated the senatorial apportionment provisions in the Illinois Constitution and statutes. There the Supreme Court of Illinois held the composition of the Illinois Senate invalid and the court expressed confidence that the Illinois General Assembly would "successfully perform its duty to enact a constitutionally valid plan during the current session." In vacating the order of the District Court the United States Supreme Court stated at p. 409, 85 S.Ct. at p. 1527:

"We believe that the District Court should have stayed its hand. The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged."

Under the particular circumstances of reapportionment in New Jersey enjoining the June primary would be unwarranted interference with the orderly state procedure that is now in the final process of attaining its lawful objective. Our abstention under general equitable considerations in this instance is truly in the interest of all the people. The cases cited by plaintiff are not contrary authority here. This Court has been advised of no valid reason for disrupting the impending primary election on June 3, 1969. To delay the primary until September would cause statewide serious confusion and would in no way help the fundamental goal of reapportionment. At most

another temporary plan might be suggested. In all of this we are mindful of the up-coming 1970 decennial census, which will furnish accurate current population figures. Any plan now submitted will be weighted with obsolete census calculations made more so by the admitted mobility of the citizenry in New Jersey. The election processes for June are under way. To attempt to reverse direction at this time could have no end but chaos. In line with this we are not at all persuaded by plaintiff's theory that acceptable redistricting could be arranged within a relatively short period.

Plaintiff mistakenly relies on Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1966), alleging that it is completely dispositive of the problem before us. In that matter the Supreme Court reversed the District Court approval of an interim plan on the grounds that "The District Court made no attempt to explain or justify the many variations among the legislative districts." There is no indication in Swann that the State Court ever had the Florida reapportionment concerned before it.

Not only do we find ample justification for not issuing the requested injunction but just as importantly, we find no reasonable excuse for allowing such injunction. We are not confronted with a state remedy though adequate in theory, not available in practice as occurred in Monroe v. Pape, 365 U.S. 167, 174, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). We are not staying our hand to allow the New Jersey Court to proceed first with some doubtful administration remedy. McNeese v. Board of Education, 373 U.S. 668, 674–675, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). There are no doubts whatsoever about New Jersey's power to provide permanent constitutional reapportionment for its citizens. Nor is there any doubt that the United States Supreme Court desires and has repeatedly urged the several States to themselves adopt constitutionally sound reapportionment. (Scott v. Germano,

supra). New Jersey is at this time in the final stages of obtaining constitutionally satisfactory voting reapportionment for her people. This Court, under the facts before us, should not impede the attainment of that essential solution.

The motion for an interlocutory injunction will be denied.